MERCK & CO. v. UNITED STATES (No. 1451).[1]

CREOLIN AND SHEEP DIP.

The importation is of saponified creosote put up in smaller packages under the trade-mark designation of "Creolin." From the evidence here it appears there may be some article which is chiefly used as a sheep dip, but it does not appear that creolin is either commercially or commonly known as a sheep dip, nor that it has ever been officially recognized by the Government as such or that it is chiefly used for that purpose. The presumption of correctness attaching to the collector's decision was not accordingly overcome.

[1] Reported in T. D. 35274 (28 Treas. Dec., 528).

## United States Court of Customs Appeals, March 25, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36180 (T. D. 34668).

[Affirmed.]

*Allan R. Brown* (*Charles A. Darius* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Leland N. Wood,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise invoiced as creosote, saponified, was classified by the collector of customs at the port of New York as a preparation of coal tar and was accordingly assessed for duty at 20 per cent ad valorem under the provisions of paragraph 15 of the tariff act of 1909, which paragraph reads as follows:

15. Coal-tar dyes or colors, not specially provided for in this section, thirty per centum ad valorem; all other products or preparations of coal tar, not colors or dyes and not medicinal, not specially provided for in this section, twenty per centum ad valorem.

The importers protested that the merchandise was sheep dip and that therefore it was entitled to free entry under the provisions of paragraph 669 of said act, which said paragraph is as follows:

Free list.   That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty: * * *.

669. Sheep dip.

The Board of General Appraisers overruled the protest and the importers appealed.

On the hearing before the board it appeared from the testimony of the witnesses introduced by the importers that the merchandise is saponified creosote which is imported in large wooden barrels or steel drums, each barrel or drum containing 50 gallons of creosote weighing approximately 400 pounds.   It was shown by the evidence that the importing company puts up the saponified creosote in smaller packages and sells it to the wholesale drug trade, sheepowners, stock dealers, stock raisers, and stablemen under the trade-mark designation of "Creolin."

One of the witnesses, Benjamin L. Murray, chemist for Merck & Co., testified that while saponified creosote imported by that company varied very little in kind, quality, or analysis the term "saponified creosote" covered a variety of products which may vary widely, "because saponified creosote is generally a mixture of several ingredients and the ingredients are added in different proportions." Three of the importers' witnesses stated that sheep dip was a liquid preparation designed to be used for dipping sheep in order to cure

them of the disease known as scabies, and that they had used creolin
for that purpose with beneficial results.  The witness Murray said
that he had once diluted the creolin according to instructions con-
tained in Government publications and had applied it to sheep
afflicted with scabies and found it an excellent remedy.

S. R. Meyers, another witness for the importers and a veterinarian
by profession, declared that he had known of creolin for about six
years and that he had used it as a general disinfectant, antiseptic,
and deodorizer, and as a dip to destroy ticks on sheep.  On cross-
examination Mr. Myers admitted that he had used but five pints of
creolin in four years as a sheep dip and that he had used a dozen
pints in one year as a disinfectant.

Dr. A. C. Bruton, a veterinary surgeon, was the only other witness
who furnished any information concerning the use of creolin as a
sheep dip, and he went no further than to say that he had used creolin
a *little* for sheep dipping and that it was effective.

Charles A. Darius testified that creolin was chiefly used as a disin-
fectant.

From this testimony it seems certain that creolin is not chiefly
used as a sheep dip and that it is in fact very little used for that
purpose.

It is not claimed, nor is there any evidence, that creolin is defi-
nitely, uniformly, and generally recognized by the trade as sheep
dip.  Neither is it shown that the term "sheep dip" as used in the
tariff act includes saponified creosote having substantially the same
composition as creolin.  The importers, however, contend vigorously
that saponified creosote is one of the four kinds of sheep dip officially
recognized by the Government as early as April 3, 1907 (see Order
No. 143, Bureau of Animal Industry, United States Department of
Agriculture), and that approval of saponified creosote for the dipping
of sheep for the cure of scabies was officially announced by the
Department of Agriculture in Bureau of Animal Industry Bulletin
107, issued July 17, 1908.  From this it is argued in effect that sa-
ponified creosote was one of the sheep dips which Congress had in
mind at the time it passed paragraph 669, and that as creolin is a
saponified creosote it should be admitted free of duty as sheep dip.
We can not agree with the importers as to the facts upon which that
conclusion was based, first, because a reading of both bulletin and
order clearly shows that approval was not given to all creosote dips,
and, second, because it was not satisfactorily shown by the importers
that creolin was the creosote or coal-tar dip contemplated by Order
143 or Bulletin 107.  From Bulletin 107 it affirmatively appears
that the resin acids and soda of saponified creosote should be present
in combination as resin soap and approximately in equivalent pro-
portions.  We assume that this does not mean equal proportions,

but that proportion of resin acids and soda which would effectuate a complete combination and make soap. What that proportion is does not appear in either the bulletin or the order, nor was it shown by the evidence, and consequently we are wholly unable to say whether the creolin imported contains the proper proportions of soda and resin acids. The witness Murray did say that he had examined the merchandise imported and found that it conformed to the tests prescribed by regulation 33 of Department Order 143. It should be noted, however, that the tests mentioned by this witness are tests of the diluted and not of the concentrated dip, and that these tests do not include the analyses prescribed by Bulletin 107 for concentrated coal-tar and creosote compounds intended for use as dips. It does not appear what method was adopted in making the analyses which were returned by the importing company and relied upon by it as evidence to show the composition of the creolin and the relative proportion of its components. Bulletin 107 calls especial attention to the fact that commercial methods of analysis are unreliable and contain "some serious sources of error." As it does not appear that the analyses in evidence were made according to the methods prescribed by the Department of Agriculture, and as we must assume that they were made according to the commercial method, because made by a chemist employed by a commercial house and charged with the duty of making analyses for commercial purposes, we can not accept the analyses set out in the record as proof that creolin is the coal-tar creosote dip contemplated by Bulletin 107. That all coal-tar creosote dips were not regarded by the Department of Agriculture as fit for sheep dips is made very clear by Order 143 and by Bulletin 107, in which it is suggested that manufacturers who desire the department to approve their dips for official dipping should submit to the Bureau of Animal Industry a sample of their product, accompanied by the formula used in preparing the dip. So far as disclosed by the record, creolin was never submitted to the Bureau of Animal Industry for approval.

It is interesting in this connection to note that Order No. 210, issued June 18, 1914, by the Bureau of Animal Industry, limits the permitted dips to the lime-sulphur dip and does not mention coal-tar creosote dips of any kind. Indeed, as early as August 18, 1913, the creosote dips were, by amendment 9 to Bureau of Animal Industry Order 143, eliminated from the dips officially approved.

For all that appears from the evidence there may be some article which is chiefly used as a sheep dip, and as it does not appear that creolin is either commercially or commonly known as a sheep dip, or that it has ever been officially recognized by the Government as a sheep dip, or that it is chiefly used as a sheep dip, we think that the

presumption of correctness attaching to the collector's decision has not been overcome.

The decision of the Board of General Appraisers is therefore *affirmed*.